# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DEBRA CLARK GORDON,          :
                                    :
            Plaintiff,          :
                                      :
            v.                :         Civil Action No. 09-1262 (RBW)
                                      :
OFFICE OF THE ARCHITECT OF THE  :
CAPITOL,                     :
                                      :
            Defendant.       :
_____:

## MEMORANDUM OPINION

On July 8, 2009, the plaintiff, Debra Clark Gordon, commenced this action against her employer, the Office of the Architect of the Capitol, alleging discriminatory and retaliatory employment practices in violation of 2 U.S.C. § 1311(a)(1) and 2 U.S.C. § 1317(a) of the Congressional Accountability Act ("CAA"). Complaint ("Compl.") ¶ 1. Currently before this Court is the Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment ("Def.'s Mot."), arguing that the "[p]laintiff has failed to exhaust her administrative remedies with respect to her claims [therefore] this Court lacks jurisdiction to address those claims." Def.'s Mot. at 1. Alternatively, the defendant moves for summary judgment stating "that there is no genuine issue of material fact and [it] is entitled to a judgment as a matter of law." Id. After carefully considering the defendant's motion to dismiss, all relevant memoranda of law, and the

exhibits attached thereto,[1] the Court concludes, for the following reasons, that it must grant in part and deny in part the defendant's motion.

## I. Background

The evidence viewed in the light most favorable to the plaintiff is the following. The plaintiff is an African American female, Compl. ¶ 25, who since January 2005 has been employed by the defendant, working in the Superintendent's Office of the Senate Office Buildings as an Administrative Support Assistant at the GS-08 Step 6 level, id. ¶ 7. On November 16, 2007, the defendant advertised that it was seeking applications for a GS-03128-9 Supervisory Secretary position in Vacancy Announcement SOB 2008-104. Defendant's Statement of Material Facts Not in Dispute ("Def.'s Facts") ¶¶ 3, 6. Due to an omission in the initial announcement, the availability of the position was advertised again on two occasions, once in Vacancy Announcement SOB 2008-014R1A on November 23, 2007, and again in Vacancy Announcement SOB 2008-014R2A on December 17, 2007. Compl. ¶¶ 10-11; Def.'s Facts ¶ 6. The plaintiff applied for the position based on the initial announcement and re-applied again in response to the final announcement, and she was ultimately interviewed for the position. Compl. ¶¶ 8, 14-15.

Before the vacancy was announced, the "[p]laintiff was assigned and . . . [had] perform[ed] the higher graded duties of the vacant position on a regular basis," and according to

---

[1] In addition to the Complaint and the Defendant's Motion to Dismiss, or In the Alternative, for Summary Judgment and the memorandum submitted in support of the defendant's motion, the Court considered the following documents in reaching its decision: (1) the Defendant's Statement of Material Facts Not In Dispute ("Def.'s Facts"); (2) the Plaintiff's Opposition to Defendant's Statement of Material Facts ("Pl.'s Facts"); (3) the Plaintiff's Opposition to Defendant's Motion to Dismiss, or In the Alternative for Summary Judgment ("Pl's Opp, 'n"); and (4) the Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, or in Alternative, for Summary Judgment ("Def.'s Reply").

the plaintiff was therefore "highly qualified" for the Supervisory Secretary position.  Id. ¶¶ 15-16.  However, Robin Morey, Superintendent of the Senate Office Buildings and the selecting official for the position, chose Christine Camera, a Caucasian female, for the position.  Def.'s Facts ¶¶ 9-10; Compl. ¶ 18.  On January 24, 2008, Mr. Morey notified the defendant's Human Resources Office of his decision using AVUE, a digitalized human resources software package.  Def.'s Facts ¶¶ 5, 11.  At the time of her selection, Ms. Camera was a GS Step 1 Time and Attendance Clerk and had only been employed by the defendant for approximately five months.  Compl. ¶ 19.

On January 30, 2008, Mr. Morey, in a private conversation with the plaintiff, informed her of his decision not to select her for the position.  Id. at ¶ 17.  On the following day, the plaintiff met with Edwin Lopez, an Equal Opportunity Office specialist in the defendant's Office of Employment Opportunity and Conciliation Programs ("Office of Employment Opportunity"), and "discussed her opposition to the selection of [Ms.] Camarata [sic]" for the Supervisory Secretary position.[2]  Id. at ¶ 21.  Subsequent to the meeting, the plaintiff informed Mr. Lopez of her decision to file a complaint concerning her non-selection with the Office of Compliance, Defendant's Statement of Material Facts Not in Dispute ("Def.'s Facts") ¶ 14; Plaintiff's Opposition to Defendant's Statement of Material Facts ("Pl.'s Facts") ¶ 14, the administrative body created by the CAA to entertain employment related complaints of congressional employees, 2 U.S.C. §§ 1301(12), 1402(a).  During that same meeting, Mr. Lopez reminded the plaintiff of the 180 day limit she had to file a request for counseling with the Office of

---

[2] While Lopez claims that the plaintiff did not allege discrimination during this conversation, Def.'s Mot., Exhibit ("Ex.") 4 (Declaration of Edwin Lopez) ¶ 3, the plaintiff posits that her reference to Camera's race implicitly raised "'color' as a basis of discrimination" in the selection process, Plaintiff's Opposition to Defendant's Statement of Material Facts ("Pl.'s Facts") ¶ 13.

Compliance as required by the CAA.  Def.'s Facts ¶ 14; Pl.'s Facts ¶ 14.  However, the Plaintiff

asserts that Lopez did not inform her of the date when the 180 day time period commenced.

Pl.'s Facts ¶ 14.  Further, the plaintiff maintains that she was not informed that the effective date

of Ms. Camera's selection was January 24, 2008, until receiving the defendant's motion to

dismiss.  Plaintiff's Opposition to Defendant's Motion to Dismiss, or in the Alternative, for

Summary Judgment with supporting Memorandum of Points and Authorities ("Pl.'s Opp'n"),

Ex. 2 (Declaration of Debra Clark Gordon) ¶ 11.

On July 28, 2008, the plaintiff requested counseling with the Office of Compliance,

"alleging that she was not selected for a promotion because of [her] race, and was subsequently

constructively demoted, and denied training and other promotional opportunities in retaliation

[for her opposition to] alleged race discrimination."  Def.'s Mot., Ex. 2 (Notice of Invocation of

Mediation).  At the conclusion of the counseling period, the plaintiff continued to pursue her

administrative remedies with the Office of Compliance by submitting a request for mediation.

Id.  The plaintiff commenced this action when a resolution of her complaints could not be

resolved through the mediation process.  Compl. ¶ 5.

In her Complaint, the plaintiff asserts three claims arising from her non-selection for the

Supervisory Secretary position: (1) "Discrimination based on [her] African American race and

color;" (2) "Retaliation in violation of 2 U.S.C. 1317(a) based on [her] opposition to matters

made unlawful by the CAA and participation in federally protected activities under the CAA;"

and (3) "Retaliation based on [her] participation in federal[ly] protected activities in violation of

section 207(a): creation of a hostile work environment."  Compl. at 5-7.  In response, the

defendant filed the motion to dismiss the complaint for lack of subject matter jurisdiction, or in the alternative, for summary judgment that is the subject of this memorandum opinion.

## II. Standards of Review

As noted above, the defendant seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), or in the alternative, summary judgment under Rule 56.

A.      Motion to Dismiss under Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) "presents a threshold challenge to the Court's jurisdiction . . . [and] the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." Curran v. Holder, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted). When reviewing a motion to dismiss pursuant to Rule 12(b)(1), the Court must accept as true all of the factual allegations contained in the complaint. Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). Under Rule 12(b)(1), "it is to be presumed that a cause lies outside [the federal courts'] limited jurisdiction," Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), unless the plaintiff establishes by a preponderance of the evidence that the Court possesses jurisdiction, see, e.g., Hollingsworth v. Duff, 444 F. Supp. 2d 61, 63 (D.D.C. 2006). Therefore, the "plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (internal citation and quotation marks omitted). Finally, in determining whether it has jurisdiction over the case, the Court "may consider materials outside of the pleadings." Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

B.    <u>Motion for Summary Judgment</u>

Before granting a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, this Court must find that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000) (citations omitted). The moving party has the burden of demonstrating the absence of a genuine issue of material fact, and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

In responding to a summary judgment motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Accordingly, the non-moving party must not rely on "mere allegations or denials . . . but . . . must set forth specific facts showing that there [are] genuine issue[s] for trial." <u>Anderson</u>, 477 U.S. at 248 (internal quotation and citation omitted) (second omission in original). Thus, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 249-50 (citations omitted).

**III. Analysis**

A.     The Defendant's Motion to Dismiss Pursuant to 12(b)(1)

The defendant makes two arguments in support of its contention that this Court lacks subject matter jurisdiction over the plaintiff's claims.  First, regarding the plaintiff's allegations of discrimination resulting from her non-selection for the Supervisory Secretary position, the defendant argues that the plaintiff did not properly exhaust her administrative remedies under the CAA before filing suit because her request for counseling was not made within the time period required by the statute.[3]  Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss Counts I, II, and III of Plaintiff's Complaint ("Def.'s Mem.") at 1.[4]  Before initiating a civil action alleging a violation of the CAA, an employee must first complete counseling as prescribed by 2 U.S.C. § 1402, and mediation as prescribed by 2 U.S.C. § 1403.  2 U.S.C. § 1408 (2006).  To commence this process, the employee must first submit a request for counseling "not later than 180 days after the date of the alleged violation."  2 U.S.C. § 1402 (2006).  The defendant argues that for the purposes of Count I of the Complaint, the alleged violation of the CAA was the decision to hire Ms. Camera, which occurred on January 24, 2008, more than 180 days before the plaintiff requested counseling.  Def.'s Mem. at 5.  In opposition, the plaintiff contends that she was never informed of the "effective date" of Ms. Camera's selection, and thus, her request for counseling was made within 180 days of the date on which

---

[3] The defendant also argues that the plaintiff did not allege color discrimination in her request for counseling, and therefore, the Court lacks jurisdiction over this claim due to the plaintiff's failure to exhaust her administrative remedies.  Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss Counts I, II, and III of Plaintiff's Complaint ("Def.'s Mem.") at 5.  However, this Court construes the plaintiff's claims regarding racial and color discrimination, this being a case in which the plaintiff is an African American alleging disparate treatment in regards to a Caucasian coworker, as identical claims.

[4] Because the defendant failed to paginate its memorandum admitted in support of its motion, the Court has taken the liberty of assigning page numbers to it based on the order in which the papers were submitted to the Court.

she was notified that she had not been selected for the position, which was January 30, 2008. Pl.'s Opp'n at 14. The plaintiff relies upon three legal theories in support of her position that her request for counseling was timely under these circumstances: (1) the <u>Delaware State College v. Ricks</u>, 449 U.S. 250 (1980) "notification rule"; (2) the federal discovery rule; and (3) the doctrine of equitable tolling. Pl.'s Opp'n at 2.

Second, in seeking dismissal of the plaintiff's retaliation and hostile work environment claims, the defendant states that these claims as pled in Counts II and III of her Complaint are based on alleged retribution against her "[r]equest for Counseling and requesting and participating in mediation in the instant matter." Def.'s Mem. at 5 (quoting Compl. ¶¶ 31, 37). The defendant argues that "[s]ince [the p]laintiff did not assert the retaliation or hostile work environment claims during her initial counseling on July 28, 2008, she would need additional counseling sessions for th[ose] two claims to comply with the CAA three-step process." <u>Id.</u> at 8. The plaintiff counters the defendant's position, arguing that the retaliation claims are also based on her initial opposition to the alleged discriminatory hiring decision and her meetings with Lopez, which were included in her request for counseling. Compl. at ¶ 23. Specifically, the plaintiff states that she "formally, requested counseling on July 28, 2008, alleging that she was not selected for promotion because of race, and was subsequently constructively demoted, and denied training and other promotional opportunities in retaliation for opposing alleged race discrimination." Pl.'s Facts ¶ 18. Lastly, the plaintiff fails to directly address the defendant's argument regarding the creation of a hostile work environment as alleged in Count III of the Complaint.

Under the CAA, congressional employees "shall be free from any discrimination based on race [and] color." 2 U.S.C. §§ 1301(3)(B), 1311(a)(1). District courts have jurisdiction over civil actions brought under the CAA, but "only to seek redress for a violation for which the employee has completed counseling and mediation." 2 U.S.C. § 1408(a). And the CAA requires that a request for counseling be made within 180 days of the alleged violation. 2 USC § 1402(a).

As an initial matter, the Court agrees with the plaintiff that pursuant to either the notification rule or the discovery rule the plaintiff timely requested counseling for her claim of discrimination regarding her non-selection for the Supervisory Secretary position.[5] Therefore, the Court must deny the defendant's motion to dismiss Count I of the Complaint. However, the defendant is correct that this Court lacks jurisdiction to entertain a claim under the CAA for which the plaintiff has not exhausted her available administrative remedies. And here, the plaintiff did not seek counseling and mediation for the alleged retaliation based on her participation in protected activities with the Office of Compliance. Therefore, this Court must grant the defendant's motion to dismiss Count II to the extent that it is based on allegations that the defendant retaliated against the plaintiff for her participation in counseling and mediation. However, to the extent that the plaintiff alleges retaliation for her initial opposition to her non-selection, including the plaintiff's interaction with Mr. Lopez and the Office of Employment Opportunity, the defendant's motion to dismiss Count II is denied. Similarly, the plaintiff failed to assert that she had been subjected to a hostile work environment in her July 28, 2008 request

---

[5] As previously noted, the plaintiff also relies on the doctrine of equitable tolling in opposing the defendant's dismissal motion. However, the District of Columbia Circuit has held that for claims brought under the CAA, "the three step process is jurisdictional and thus . . . equitable doctrines, such as vicarious exhaustion, do not apply to excuse compliance." Blackmon-Malloy v. U.S. Capitol Police Bd., 575 F.3d 699, 702 (D.C. Cir. 2009). Thus, the doctrine of equitable tolling is not available to plaintiffs who have not exhausted their administrative remedies within the time frame mandated by the CAA.

for counseling.[6]  However, the Court declines to further examine this issue and will instead grant the defendant's motion to dismiss Count III in its entirety, as the plaintiff has failed to raise any objection to the defendant's motion to dismiss this claim in her opposition.  See Fed. R. Civ. P. 56(e)(2); Buggs v. Powell, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (citing FDIC v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997).

      1.      The Plaintiff's Discrimination Claim

As noted earlier, under the CAA, "personnel actions affecting covered employees shall be made free from any discrimination based on race, color, religion, sex, or national origin, within the meaning of section 703 of the Civil Rights Act of 1964."  2 U.S.C. § 1311(a).  The plaintiff contends that "[t]here was a causal connection between [her] African American race and color and [the] Defendant's non-selection of the Plaintiff" that violated her rights under § 1311(a).  Compl. ¶ 26.  The CAA provides an injured employee with the right to seek redress against the government through a civil action, but limits this waiver of sovereign immunity to violations for which the plaintiff has properly exhausted her administrative remedies with the Office of Compliance.  2 U.S.C. § 1408.  As previously noted, the employee must complete counseling and mediation pursuant to § 1402 and § 1403 of the CAA before initiating a civil action and must file the request for counseling within 180 days of the alleged violation.  2 U.S.C. § 1402, 1408.  However, the exact date on which the limitation period for requesting counseling begins to run under the CAA is not directly addressed by the statute.

_____

[6] The Court notes that although a hostile work environment can be the result of retaliation, retaliation does not always result in a hostile work environment, thus, the two claims are separate and a successful retaliation claim has its own set of prerequisites.  See Baird v. Snowbarger, ___ F. Supp. 2d ___, No. Civ. A. 09-1091 (ESH), 2010 WL 3999000, at *11-13 (D.D.C. Oct. 13, 2010) (discussing the difference between a retaliation claim and a hostile work environment claim).

The CAA acts as a limited waiver of sovereign immunity by making several federal employment statutes applicable to the United States Congress and its associated agencies. 2 U.S.C. § 1302(a). Among the statutes that the CAA makes applicable to the legislative branch is Title VII of the Civil Rights Act of 1964 ("Title VII"). Id. And the plaintiff's discrimination claim alleges a violation of § 1311(a) of the CAA, which incorporates Title VII, 2 U.S.C. § 1311, but as the defendant correctly points out, "the CAA does not fully incorporate Title VII. [While t]he CAA incorporates much of Title VII's substantive law, . . . it establishes its own comprehensive administrative regime – including jurisdictional provisions." Blackmon-Malloy v. U.S. Capitol Police Bd., 575 F.3d 699, 706 (D.C. Cir. 2009). Although not necessarily binding precedent, courts when construing the CAA often consider as persuasive case law interpreting Title VII. See Singh v. U.S. House of Representatives, 300 F. Supp. 2d 48, 53 n.5 (D.D.C. 2004) (noting that the House of Representatives' Committee on Ways and Means recognized "that the Office of Compliance Summary, created in conjunction with the CAA, suggests that claims brought under Section 1311 of the CAA are subject to the requirements and standards set forth in court decisions interpreting Title VII").

The Supreme Court has held, for the purposes of Title VII, that an adverse employment action occurs and the filing period limitation of the statute begins to run on the date a person is notified of an employment decision. Ricks, 449 U.S. at 258 ("[T]he only alleged discrimination occurred—and the filing limitations periods therefore commenced—at the time the tenure decision was made and communicated to the [employee]."); see Saunders v. District of Columbia, No. Civ.A. 02-1803CKK, 2005 WL 3213984, at *6 (D.D.C. Oct. 25, 2005) ("Therefore, the proper date on which the 300-day statute of limitations to file with the EEOC

began to run was July 25, 2000, the date of her notification."); McCants v. Glickman, 180 F. Supp. 2d 35, 40 (D.D.C. 2001) (The "time period began to run, then, when Mr. McCants learned that he was not selected for the position").The District of Columbia Circuit ("D.C. Circuit") has subsequently applied the holding in Ricks to other statutes incorporated into the CAA, including the Rehabilitation Act: "Under Delaware State College v. Ricks, notice of final action fixes the timing of an act of employment discrimination for statute of limitations purposes." Crandall v. Paralyzed Veterans of Am., 146 F.3d 894, 896 (D.C. Cir. 1998) (internal citation omitted). And Courts in this Circuit have also taken this approach in interpreting the similarly worded statute of limitations of the District of Columbia Human Rights Act ("DCHRA"). See Murphy v. PricewaterhouseCoopers, LLP, 580 F. Supp. 2d 16, 25 (D.D.C. 2008) (holding that under the DCHRA, the statute of limitations begins to run when the "plaintiff is given unequivocal notice of the [adverse] decision, not on the effective date of the decision") (internal citation and quotation marks omitted). This has also been the rule adopted by several circuits in determining the accrual date for a cause of action in employment discrimination suits brought under the statutes incorporated by the CAA. See Flaherty v. Metromail Corp., 235 F.3d 133, 137 (2d Cir. 2000) (in the Title VII context, "the limitations period begins to run on the date that the employer gives definite notice of that decision to the employee"); Aronsen v. Zellerbach, 662 F.2d 584, 593 (9th Cir. 1980) ("We think the Court has indicated beyond doubt that in Title VII and, analogously, ADEA [(Age Discrimination in Employment Act)] discrimination suits, inquiry for purposes of determining when the limitations period begins to run must center on the date when the employee has notice of the unlawful act; neither cessation of work nor official termination noted on company personnel records is singularly relevant to this inquiry.").

Other circuits have applied the federal discovery rule in determining when a cause of action accrues in employment discrimination cases. Under the discovery rule, a claim accrues, and the applicable limitations period begins to run, on the date when the plaintiff discovers or reasonably should have discovered that he has been injured. Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (7th Cir. 1990). Several circuits have applied the discovery rule to the time limitations provisions of the laws incorporated by the CAA. See McWilliams v. Escambia Cnty. Sch. Bd., 643 F.2d 326, 328 (5th Cir. 1981) (in Title VII cases, the "limitations period begins to run from the time that the complainant knows or reasonably should know that the challenged act has occurred"); see also Cada, 920 F.2d at 450 (finding that "[t]he discovery rule is implicit in the holding of Ricks," and noting in an ADEA case that "accrual is the date on which the statute of limitations begins to run. It is not the date on which the wrong that injures the plaintiff occurs, but the date—often the same, but sometimes later—on which the plaintiff discovers that he has been injured"). The D.C. Circuit, applying the discovery rule in a contracts case, observed that Cada stands for the proposition that the "discovery rule is to be applied in all federal question cases in the absence of a contrary directive from Congress." Connors v. Hallmark, 935 F.2d 336, 342 (D.C. Cir. 1991) (internal quotation marks omitted). In most employment discrimination cases, there will be little practical difference between the Ricks notification rule and the federal discovery rule, as typically "[i]f the complainant knows or reasonably should know that the challenged act has occurred, the employer necessarily has made its decision and has communicated it or made it apparent to the complainant." McWilliams, 643 F.2d at 328.

Though never directly addressed, courts in this Circuit have often seemed to implicitly adopt either the notification rule from Ricks or the federal discovery rule in determining the date from which the statute of limitations begins to run under the CAA. See Brady v. Livingood, 456 F. Supp. 2d 1 (D.D.C. 2006) (Court used the date the plaintiff was informed of his demotion as the date of the alleged violation); Thompson v. Capitol Police Bd., 120 F. Supp. 2d 78 (D.D.C. 2000) (Court granted the defendant's motion for summary judgment due to the untimeliness of plaintiff's request for counseling, using the date plaintiff was notified of his termination as the date on which the limitations period began to run); see also Peterson v. Hantman, No. 02-2552, 2006 WL 1442662, at *2 (D.D.C. May 25, 2006) (in considering the timeliness of the plaintiff's request for counseling, the court sought to determine when he "knew or reasonably should have known that he had not been selected for the WG-8 position").

Despite the case law discussed above, the defendant offers cases it contends supports its argument that the time for requesting counseling had expired when the plaintiff made her request; however, the cases cited by the defendant do not support the defendant's interpretation of when the start of the limitation period commences. The defendant relies on language in Gibson v. Office of the Architect of the Capitol, No. 00-2424, 2002 WL 32713321 (D.D.C. Nov. 19, 2002) as support for its apparent position that the proper date to identify in determining when the statute of limitations begins to run under the CAA is the date of plaintiff's non-selection for the position, regardless of whether the plaintiff was aware of the decision. Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss ("Def.'s Opp'n") at 3. However, the language quoted by the defendant does not conflict with the plaintiff's position here, as Judge Kollar-Kotelly found that the limitation period commenced when the plaintiff was told of her

non-selection, which she also found was the date of the "alleged violation." Gibson, 2002 WL

32713321, at *4 (quoting 2 U.S.C. 1042(a)) (emphasis in the original). The defendant also relies

on Britton v. Office of Compliance, 412 F.3d 1324, 1328 (Fed. Cir. 2005), but the court there

similarly used the date on which the plaintiff was informed of the denial of her Family Medical

Leave Act requests in determining the accrual of the cause of action.[7] Therefore, the Court does

not agree with the defendant's seeming interpretation that the CAA requires that a congressional

employee seek counseling within 180 days after an act of discrimination occurs, even if the

plaintiff is unaware of the conduct.

Accordingly, this Court finds that under either the notification rule or the discovery rule,

the limitation period for the plaintiff's discriminatory non-selection claim began to run on

January 30, 2008, when Morey informed the plaintiff that she had not been selected for the

Supervisory Secretary position. Therefore, the plaintiff's July 28, 2008 request for counseling

was timely under § 1402(a), and this court has jurisdiction to consider it pursuant to § 1408.

Therefore, the defendant's motion to dismiss Count I is denied.

2.    The Plaintiff's Retaliation Claims

Under the CAA, an employer may not

> intimidate, take reprisal against, or otherwise discriminate against, any
> covered employee because the covered employee has opposed any
> practice made unlawful by this chapter, or because the covered employee
> has initiated proceedings, made a charge, or testified, assisted, or
> participated in any manner in a hearing or other proceeding under this
> chapter.

2 U.S.C. § 1317(a). However, as noted above, the CAA grants district courts

jurisdiction over civil actions brought by a covered employee "only to seek redress

_____
[7] The Family Medical Leave Act is codified at 29 U.S.C. §§ 2601-2654 (2006).

for a violation for which the employee has completed counseling and mediation." 2 U.S.C. § 1408(a). Failure to exhaust these administrative remedies for an alleged violation before bringing suit leaves the court without jurisdiction over the civil action. See Blackmon-Malloy, 575 F.3d. at 705. This Court has also held that the completion of counseling and mediation for one set of violations does not give the court jurisdiction over related claims of retaliation that occurred after counseling had commenced; the administrative remedies must be exhausted for each claim. Halcomb v. Office of the Senate Sergeant-At-Arms of the U.S. Senate, 209 F. Supp. 2d 175, 177-79 (D.D.C. 2002) ("Because the language of the CAA provision at issue in this case clearly confers jurisdiction to this Court only if plaintiff has satisfied the administrative prerequisites to filing suit, the Court holds that plaintiff's claim of retaliation must be dismissed for failure to exhaust her administrative remedies."). In Count II of her Complaint, the plaintiff claims that after she formally requested counseling on July 28, 2008, due to her non-selection for the Supervisory Secretary position, she suffered a "reduction in duties and responsibility, heightened scrutiny, and loss of status and deprivation of the necessary building blocks for advancement in [her] employment [with the d]efendant." Compl. ¶ 6; see also id. ¶ 7. The plaintiff further alleges that these adverse employment actions were taken in retaliation for her opposition to matters made unlawful by the CAA, as well as her participation in federally protected activities under the CAA, specifically, her participation in counseling and mediation. Id. ¶ 7. The plaintiff's retaliation claim therefore includes allegations that she had been retaliated against for expressing her initial opposition

concerning her non-selection for the Supervisory Secretary position on January 31, 2008, as well as for her participation in counseling and mediation. Def.'s Mot., Ex. 2 (Notice of Invocation of Mediation). Accordingly, the plaintiff has properly exhausted her administrative remedies concerning her claim that when she met with Mr. Lopez and members of the Office of Employment Opportunity she had already been "constructively demoted, and denied training and other promotional opportunities in retaliation for opposing alleged race discrimination." Id. However, the request to initiate counseling, by definition, could not have included allegations of retaliation for the plaintiff's actual participation in counseling and the mediation that occurred thereafter. Thus, to bring a civil action for any retaliatory action that allegedly occurred after her participation in the counseling or the mediation, the plaintiff should have requested additional counseling and mediation to address any such actions. See Halcomb, 209 F. Supp. 2d at 177. Therefore, the defendant's motion to dismiss Count II of the Complaint is granted to the extent that the claim is based on alleged retaliation resulting from the plaintiff's participation in counseling and mediation, and denied as to the plaintiff's allegations that she was constructively demoted and denied training and promotional opportunities for registering her initial informal objection to her non-selection on January 31, 2008.

In Count III of her Complaint, the plaintiff seeks redress for the defendant's alleged creation of a hostile work environment in retaliation for her opposition to activities made unlawful by the CAA and her participation in federally protected activities. Compl. at 7-8. However, the plaintiff did not allege that she was subjected to a

hostile work environment in either her requests for counseling or mediation. Def.'s

Mot., Ex. 2 (Notice of Invocation of Mediation). Thus, the defendant's motion to

dismiss must be granted as to Count III.

B.      The Defendant's Motion for Summary Judgment

The defendant alternatively moves for summary judgment "on the basis that

there is no genuine issue of material fact and [the d]efendant is entitled to judgment

as a matter of law." Def.'s Mot. at 1. The defendant makes no further arguments in

support of this motion. In opposition, the plaintiff simply states that summary

judgment is not appropriate, citing "genuine issues of material facts respecting the

running of the statute of limitations." Pl.'s Opp'n at 1. Whether any of the plaintiff's

claims are subject to summary judgment is a determination that must be deferred. As

the parties acknowledged at the status hearing held in this matter on October 29,

2010, no discovery has yet been conducted. Considering whether summary judgment

is appropriate is therefore premature. Ciralsky v. CIA, 689 F. Supp. 2d 141, 147

(D.D.C. 2010) ("Essentially, 56(f) allows the Court to delay or deny a motion for

summary judgment as premature on the grounds that [some] discovery is necessary to

rule on th[e] motion."). Accordingly, the defendant's motion for summary judgment

is denied without prejudice.

## IV. Conclusion

For the foregoing reasons, Count II of the plaintiff's complaint is dismissed in

part and Count III of the plaintiff's complaint is dismissed in its entirety. However,

these claims are  dismissed without prejudice, as it is unclear from the complaint

whether the plaintiff is alleging that the defendant continued to retaliate against her

for her participation in federally protected activities with the Office of Compliance,

or continued to subject her to an alleged hostile work environment after she engaged

in those activities.  If any such alleged retaliatory violations continued following the

plaintiff's participation in counseling and mediation, and occurred within the last 180

days, the plaintiff may properly file requests for further counseling and mediation

concerning any such alleged claims.  And if the plaintiff timely exhausts her

administrative remedies with the Office of Compliance as required by the CAA, the

plaintiff may then amend her complaint to add these claims to her Complaint.  See

Halcomb, 209 F. Supp. 2d at 179-80.  Finally, the defendant's motion for summary

judgment is denied without prejudice [8]

                                        REGGIE B. WALTON
                                        United States District Judge

---

[8] This Memorandum Opinion accompanies the Order issued on September 30, 2010 and the Amended Order issued on November 12, 2010.