## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBRA CLARK GORDON, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 09–1262 (RBW) |
| OFFICE OF THE ARCHITECT OF THE CAPITOL, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Debra Clark Gordon, brings this action against her employer, the Office of the Architect of the Capitol, pursuant to 2 U.S.C. § 1404 (2006) of the Congressional Accountability Act ("Accountability Act"), alleging discrimination based on her race and color in violation of 2 U.S.C. § 1311(a)(1), and retaliation for participation in protected activities in violation of 2 U.S.C. § 1317(a). Complaint ("Compl.") ¶¶ 1, 5. The Court previously granted the defendant's motion to dismiss Count II of the plaintiff's complaint in part and Count III in its entirety. Gordon v. Office of the Architect of the Capitol, 750 F. Supp. 2d 82, 94 (D.D.C. 2010). Currently before this Court is the Defendant's Renewed Motion to Dismiss, or in the Alternative, for Summary Judgment ("Def.'s Mot."). After carefully considering the parties' submissions,[1]

---

[1] In addition to the documents already referenced, the Court considered the following filings in reaching its decision: (1) the Defendant's Statement of Material Facts Not in Dispute ("Def.'s Facts"); (2) the Memorandum of Points and Authorities in Support of Defendant's Renewed Motion to Dismiss or in the Alternative for Summary Judgment ("Def.'s Mem."); (3) the Plaintiff's Memorandum of Law and Points and Authorities in Support of Her Opposition to Defendant's Renewed Motion to Dismiss, or in the Alternative, for Summary Judgment ("Pl.'s Mem."); (4) the Plaintiff's Opposition to Defendant's Statement of Material Facts Submitted by Defendant in Support of Defendant's Renewed Motion to Dismiss, or in the Alternative, for Summary Judgment ("Pl.'s Facts"); and (5) the Defendant's Reply to Plaintiff's Opposition to Defendant's Renewed Motion to Dismiss or in the Alternative for Summary Judgment (Def.'s Reply).

the Court concludes, for the following reasons, that it must deny the defendant's motion to dismiss but grant the defendant's motion for summary judgment.

## I. BACKGROUND

The following facts are undisputed unless otherwise noted.[2] The plaintiff, an African American female, applied for the position of Supervisory Secretary with the defendant, her employer. Def.'s Facts ¶ 1; Pl.'s Facts ¶ 1. One of the plaintiff's superiors, Robin Morey, was the selecting official for the position. Def.'s Facts ¶ 20; Pl.'s Facts ¶ 20. Another superior, Taxiarxis Tzamaras, participated in the interview process with Morey, and an independent observer was also present. Def.'s Facts ¶ 20; Pl.'s Facts ¶ 20. Morey created the interview questions for the position and asked the same questions of the plaintiff and five other applicants. Def.'s Facts ¶ 21; (citing Def.'s Mem. Exhibit 7 ("Morey Dep.") at 32–33); see Pl.'s Facts ¶ 21 (stating that the plaintiff neither agrees with nor disputes this fact). During the job selection process, the plaintiff did not hear anyone make any racially derogatory comments, and concedes that she "could not answer whether [Morey], the selecting official, discriminated against her." Def.'s Facts ¶¶ 5–7; Pl.'s Facts ¶¶ 5–7. Morey eventually chose Christine Camera, a Caucasian female, rather than the plaintiff, for the Supervisory Secretary position. Def.'s Facts ¶ 1; Pl.'s Facts ¶ 1.

Regarding his decision, Morey explained that after reviewing the applications and interviewing the candidates, he chose Camera because of her "management experience . . . on the private industry side," Morey Dep. at 36, her "very strong sense of . . . security," id. at 36–37, and the fact that her interview responses "went into detail" using "specific examples, experiences that she had at her other employment on how to deal with [client service] matters, [and] how to

---

[2] The Court's earlier opinion contains a complete recounting of the factual allegations in this case. See Gordon, 750 F. Supp. 2d at 85–86.

ensure confidentiality," id. at 61–62.  He stated that the plaintiff, on the other hand, lacked "[a]ny ability to communicate her experience" in her interview and gave only "very short answers" without "any elaboration."  Id. at 40–41.  Morey perceived the plaintiff's responses to the interview questions as "really inadequate and not responsive to the question."  Id. at 51–52.  Furthermore, Morey said that the plaintiff exaggerated her past work experiences on her application.  Id. at 24–25; see, e.g., id. at 55–56 (commenting as he read from the plaintiff's application: "She does not do that.  Did not lead groups of people in accomplishing week-to-week or month-to-month on a regular basis.  She did not address work performance.  She did not make higher level recommendations to supervisors.").

The plaintiff agrees that her answers to the interview questions "didn't come out right."  Def.'s Facts ¶ 22; see Pl.'s Facts ¶ 22.  However, she contends that her interview responses were not indicative of her abilities, Pl.'s Facts ¶ 22, and that she was generally very well-qualified for the position, id. ¶¶ 22, 24–26.  She points out that at the time of her application, she had been employed by the defendant for twelve years and held a position one grade below the Supervisory Secretary position, see Pl.'s Mem. at 2, whereas Camera had only held a position with the defendant for five months, and Camera's selection represented "a promotion of four grades," Pl.'s Facts ¶ 26.  She vigorously contests Morey's assertion that her application contained inaccuracies.  Id. ¶¶ 29–31.  Moreover, she states that Morey took none of the same pains to verify the claims in Camera's application.  Id. ¶¶ 23, 25, 27, 29–33.

The plaintiff testified during her deposition that on January 28, 2008, she overheard Taxiarxis Tzamaras instructing someone else to send an email to several other individuals to tell them that Camera had been selected for the position.  Pl.'s Mem. at 7; see also Def.'s Facts ¶ 2

(citing the plaintiff's deposition[3]).  Two days later, on January 30, 2008, Morey met with the plaintiff and notified her of her non-selection.  Def.'s Facts ¶ 2; Pl.'s Facts ¶ 2.

The plaintiff made a request for counseling with the Office of Compliance on July 28, 2008.  Def.'s Facts ¶ 3; Pl.'s Facts ¶ 3.  The plaintiff brought this action after the conclusion of the administrative process, alleging that her non-selection was due to her race and that she was subsequently the target of retaliation for her complaint of discrimination.  Compl. ¶¶ 5, 24–42.

The defendant filed a motion to dismiss for want of jurisdiction because the plaintiff had not exhausted her administrative remedies, or in the alternative, a motion for summary judgment in its favor.  Gordon, 750 F. Supp. 2d at 84–85.  This Court granted in part and denied in part the motion.  Id. at 85.  The Court dismissed the retaliation claim "to the extent that the claim is based on alleged retaliation resulting from the plaintiff's participation in counseling and mediation" because she had failed to exhaust her administrative remedies as to that aspect of her retaliation claim, and the claim for hostile work environment in its entirety for the same reason.  Id. at 93.  Regarding the discrimination count, however, the Court held that jurisdiction in this Court was proper because the plaintiff had exhausted her administrative remedies as to this claim, see id. at 87–93, and determined that it could not yet rule on the defendant's summary judgment motion because no discovery had been conducted, see id. at 93–94.

Now, at the close of discovery, the defendant renews both its motion to dismiss and its motion for summary judgment.  The defendant again contends that this Court lacks jurisdiction over the plaintiff's discrimination claim, arguing that the plaintiff failed to exhaust her administrative remedies based on information learned during discovery.  See Def.'s Mem. at 13–

---

[3] Despite repeatedly citing the plaintiff's deposition transcript, the defendant failed to attach the relevant portions of the deposition transcript to its motion.  In this instance, the defendant's failure to include the portions which they reference is immaterial since the plaintiff included this portion of her deposition transcript as an exhibit to her opposition.  See Pl.'s Mem. Exhibit 1.

14. In the alternative, the defendant argues that it is entitled to summary judgment because the plaintiff is unable to offer evidence of either race discrimination, see id. at 14–18, or retaliation, see id. at 18–24. The plaintiff disagrees that the Court lacks jurisdiction over her discrimination claim,[4] see Pl.'s Mem. at 12–20, and argues that summary judgment is inappropriate because while "she does not have direct evidence to prove her claims of discrimination based on race and color, there is sufficient circumstantial evidence to prove [her claims]," Pl.'s Facts ¶ 4; see Pl.'s Mem. at 20–32.

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss under Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) "presents a threshold challenge to the [C]ourt's jurisdiction." Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987). When reviewing the motion, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, it is "presumed that a cause lies outside [the federal courts'] limited jurisdiction," Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and the plaintiff bears the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction, see, e.g., Hollingsworth v. Duff, 444 F. Supp. 2d 61, 63 (D.D.C. 2006). The "'[p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in

---

[4] The plaintiff "does not address Defendant's arguments respecting [retaliation]," apparently because she mistakenly believed that the retaliation count was "dismissed pursuant to the November 12, 2010 Memorandum Opinion of the Court." Pl.'s Mem. at 1–2. Because the plaintiff has failed to respond to the defendant's arguments regarding her retaliation claim, the Court considers the arguments to be conceded, and thus, to the extent the retaliation claim survived the previous motion, it is now dismissed. See Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (Walton, J.), aff'd, 98 F. App'x 8 (D.C. Cir. 2004); see also Local Rule 7(b) ("If [an opposition] memorandum is not filed within the prescribed time, the Court may treat the motion as conceded.").

resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)).  Finally, in determining whether it has jurisdiction, the Court "may consider materials outside of the pleadings."  Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### B. Motion for Summary Judgment under Rule 56(a)

Before granting a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, this Court must find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (citations omitted).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact, and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a summary judgment motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Accordingly, the non-moving party must not rely on "mere allegations or denials . . . but . . . must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477 U.S. at 248 (second omission in

original) (internal quotation marks and citation omitted).  Thus, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249–50 (citations omitted).

### III. ANALYSIS

#### A. Jurisdiction

Before turning to the merits of the case, the Court must first address whether it has jurisdiction over the plaintiff's claim.  Before bringing a claim for violation of the Accountability Act, an employee must first complete counseling and mediation with the Office of Compliance. 2 U.S.C. § 1408(a) (2006).  The request for counseling must be made "not later than 180 days after the date of the alleged violation." 2 U.S.C. § 1402(a).  Failure to complete counseling and mediation in the manner prescribed by the Act deprives the Court of jurisdiction over the ensuing claims.  Blackmon-Malloy v. U.S. Capitol Police Bd., 575 F.3d 699, 705 (D.C. Cir. 2009); see also 2 U.S.C. § 1408.  Since the plaintiff in this case made a request for counseling on July 28, 2008, the Court has jurisdiction to hear her claims only if the limitations period began to run on or after January 30, 2008—180 days prior to the request.  The defendant argues that the plaintiff's request for counseling pursuant to 2 U.S.C. § 1402 was untimely, and the Court therefore lacks jurisdiction, based on the plaintiff's statement during her deposition that on January 28, 2008, she overheard a remark by Taxiarxis Tzamaras indicating that Christine Camera had been selected for the position.  Def.'s Mem. at 13–14.  While the plaintiff concedes that she overheard the comment, Pl.'s Mem. at 7, she contends that such circumstances do not constitute the notice sufficient to begin the limitations period, Pl.'s Mem. at 7–9.

As the Court noted in its earlier opinion, Gordon, 750 F. Supp. 2d at 90–91, the relevant case law[5] reveals two methods for calculating the limitations period: (1) the "notification rule" expounded in Delaware State College v. Ricks, 449 U.S. 250 (1980); and (2) the "federal discovery rule."[6] Under the notification rule, the limitations period begins to run on the date the employment decision "[is] made and communicated to [the employee]." Id. at 258. Under the federal discovery rule, the "limitations period begins to run from the time that the complainant knows or reasonably should know that the challenged act has occurred." McWilliams v. Escambia Cnty. Sch. Bd., 658 F.2d 326, 328 (5th Cir. Unit B Oct. 1981). This Circuit has never directly addressed which rule applies in this district, and trial courts in this Circuit have to this point applied both rules.[7] Compare Gibson v. Office of the Architect of the Capitol, No. 00-2424, 2002 WL 32713321, at *4 (D.D.C. Nov. 19, 2002) (applying Ricks to begin the limitations period on the date the plaintiff was notified of his non-selection by the selecting official), with Peterson v. Hantman, No. 02–2552, 2006 WL 1442662, at *2 (D.D.C. May 25, 2006) (beginning the limitations period when the plaintiff "knew or reasonably should have known" the

---

[5] While the Accountability Act "establishes its own comprehensive administrative regime—including jurisdictional provisions," Blackmon-Malloy, 575 F.3d at 706, courts often find case law interpreting the other statutes incorporated by the Accountability Act to be persuasive. See, e.g., Singh v. U.S. House of Representatives, 300 F. Supp. 2d 48, 53 n.5 (D.D.C. 2004).

[6] The plaintiff suggests that a third method, the doctrine of equitable tolling, should be used. See Pl.'s Mem. at 18–20. However, as the Court noted in its earlier opinion, this Circuit has rejected the application of equitable doctrines to claims brought under the Accountability Act. See Blackmon-Malloy, 575 F.3d at 702 ("We hold the three-step process [for exhausting administrative remedies under the Accountability Act] is jurisdictional and thus affirm the district court ruling that equitable doctrines, such as vicarious exhaustion, do not apply to excuse compliance with it."). The Supreme Court cases cited by the plaintiff to challenge this holding involve claims brought under Title VII of the Civil Rights Act of 1964 rather than the Accountability Act; as noted above, the Act creates its own jurisdictional provisions. See id. at 706.

[7] The defendant erroneously states that the Court previously held that "the clock starts to run when the complainant knows or should have known that the challenged act has occurred." Def.'s Mem. at 13. The Court, after discussing both the notification rule and the federal discovery rule, held that the plaintiff's claim was timely under either rule. Gordon, 750 F. Supp. 2d at 92.

employment decision had occurred). Because the result of this case may turn on which rule is applied, the Court must now resolve this ambiguity.

In the absence of evidence to the contrary, the Court must apply the Ricks rule. The discovery rule is a rule of "federal common law," Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (7th Cir. 1990), which predates the Supreme Court's decision in Ricks, see McWilliams, 658 F.2d at 328 n.1. The rule is thus subject to modification by the Supreme Court, and must be deemed replaced by, or incorporated into, the Ricks holding. Indeed, other Circuits have already concluded that the two rules are, in fact, identical. See Cada, 920 F.2d at 450 ("The discovery rule is implicit in the holding of Ricks that the statute of limitations began to run 'at the time the tenure decision was made and communicated to Ricks.'") (citing Ricks, 449 U.S. at 258) (original emphasis); McWilliams, 658 F.2d at 328 n.1 ("We perceive no difference between the Ricks formulation and our pre-Ricks [discovery] rule."). To the extent the two rules differ, this Circuit has indicated a preference for the Ricks formulation. Though the Circuit has never decided the question directly, it has applied Ricks in cases involving statutes incorporated by the Accountability Act. See Crandall v. Paralyzed Veterans of Am., 146 F.3d 894, 896 (D.C. Cir. 1998) (applying Ricks to claims brought under § 504 of the Rehabilitation Act of 1973); Currier v. Radio Free Europe/Radio Liberty, Inc., 159 F.3d 1363, 1366–67 (D.C. Cir. 1998) (applying Ricks to claims brought under Title VII). The Court will therefore be guided by Ricks for assessing when the limitations period commenced in this case.

The Ricks rule resists clearly-defined standards, and its application must be considered afresh in each case. See Ricks, 449 U.S. at 258 n.9 (because "[c]omplaints that employment termination resulted from discrimination can present widely varying circumstances[,] . . . [t]he application of the general principles [of the rule] necessarily must be made on a case-by-case

9

basis."). The question of whether an informal, oral communication can trigger the limitations period was expressly left unresolved by the Supreme Court in Ricks, and has not yet been conclusively answered. See id. at 262 n.17 ("We need not decide whether the District Court correctly focused on the June 26 date [the date Ricks officially received his terminal contract offer], rather than the date the Board communicated to Ricks its unfavorable tenure decision made at the March 13, 1974, meeting."); see also Aronsen v. Crown Zellerbach, 662 F.2d 584, 594 n.16 (9th Cir. 1981) ("[T]he [Ricks] Court's reticence might have originated from a desire to avoid finding that informal, oral notice could suffice. Even so, the Court's commitment to case-by-case analysis to determine the operative date, Ricks, 449 U.S. at 258 n.9, would tend to conflict with such an interpretation . . . ").

Still, cases following Ricks do suggest that the communication to the plaintiff must meet at least some minimum formality requirements before it is deemed to trigger the running of the limitations period. First, courts must focus on the employer's action, not on the employee's subjective beliefs. See Cada, 920 F.2d at 449 ("The statute of limitations does not begin to run until the defendant takes some action, whatever the plaintiff knows or thinks.") (emphasis added); see also Flaherty v. Metromail Corp., 235 F.3d 133, 137 (2d Cir. 2000) (noting that in discriminatory discharge cases, the limitations period begins on "the date that the employer gives definite notice of that decision to the employee") (emphasis added); Crandall, 146 F.3d at 896 (limitations period began "when [the plaintiff] was notified that his employment was terminated") (emphasis added); Murphy v. PricewaterhouseCoopers, LLP, 580 F. Supp. 2d 16, 25 (D.D.C. 2008) (limitations period begins "when the 'plaintiff is given unequivocal notice'") (emphasis added). Second, the action carries official trappings, which is often communicated in written form. See Ricks, 449 U.S. at 501 n.2 (official letter from the President of the Board of

Trustees of the employer college); Saunders v. Dist. of Columbia, No. 02-1803, 2005 WL 3213984, at *2 n.2 (D.D.C. Oct. 25, 2005) ("discharge letter" from Director of Human Resources); McCants v. Glickman, 180 F. Supp. 2d 35, 37 (D.D.C. 2001) ("letter informing [the plaintiff] of his non-selection").  Finally, the communication to the plaintiff is made by someone with sufficient authority to render the decision definite.  See Ricks, 449 U.S. at 262 (communication by President of Board of Trustees after "the tenure committee had twice recommended that Ricks not receive tenure; the Faculty Senate had voted to support the tenure committee's recommendation; and the Board of Trustees formally had voted to deny Ricks tenure"); Gibson, 2002 WL 32713321, at *2, *4 (plaintiff informed of his non-selection by selecting official); Thompson v. Capitol Police Bd., 120 F. Supp. 2d 78, 80 (D.D.C. 2000) (communication by "Deputy Chief").[8]

The January 28, 2008 communication here—a request by a superior to someone else to email several individuals to inform them that Camera had been selected for the Supervisory Secretary position, which was accidentally overheard by the plaintiff—lacks any of the indicia of formality noted above.  Because the communication was only a conversation overheard incidentally by the plaintiff, it does not reflect any intentional action by the employer to inform the plaintiff of the hiring decision.  The communication was merely an instruction to send an email about the hiring decision, and thus was not made in any official manner.  And although the

---

[8] It is unclear whether analysis under the discovery rule would, as a practical matter, render a different result.  While the discovery rule focuses on what "the complainant knows or reasonably should know," McWilliams, 658 F.2d at 328, rather than on what the employer does, the same factors that are important under Ricks are often used to determine whether to impute knowledge to a plaintiff.  The action of the employer is still important because, while the focus of the discovery rule is on the mental state of the employee, that mental state is necessarily derived from the action of an employer.  Id. at 328 n.1 ("If the complainant knows or reasonably should know that the challenged act has occurred, the employer necessarily has made its decision and has communicated it or made it apparent to the complainant.").  The formality of the communication and the communicator, meanwhile, remain important to assure that plaintiffs have knowledge of an adverse employment action, rather than mere suspicion or fear that it will occur.  See id. at 328–29 (notification by the "Superintendent of Schools"); Peterson, 2006 WL 1442662, at *1–2 (notification by "supervisor on the day shift").

communication was made by an individual who was superior to the plaintiff in the employer's organizational structure, it was not made by the plaintiff's supervisor or the selecting official for the position. Thus, it was not made by someone with sufficient authority to render the decision definite. Tzamaras' January 28 comment therefore lacks all of the hallmarks of an official notification that would trigger the start of the limitations period under Ricks.

Accordingly, the Court finds that the comment overheard by the plaintiff does not constitute official notification sufficient to commence the running of the statute of limitations period, and that the plaintiff's request for counseling with the Office of Compliance 180 days after receiving official notification of her non-selection on January 30, 2008 was therefore timely. Having concluded that it has jurisdiction, the Court turns now to whether the plaintiff's employment discrimination claim survives the defendant's summary judgment motion.

### B. Summary judgment

Under the Accountability Act, "personnel actions affecting covered employees shall be made free from any discrimination based on race, color, religion, sex, or national origin, within the meaning of section 703 of the Civil Rights Act of 1964." 2 U.S.C. § 1311(a)(1) (2006). The plaintiff contends that her non-selection for a Supervisory Secretary position was based on her race. Compl. ¶¶ 25–26.

Claims of discrimination under the Accountability Act are analyzed under the familiar three-part framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 492–94 (D.C. Cir. 2008). Under this framework, the plaintiff bears the initial burden of "establish[ing] a prima facie case of . . . discrimination," McDonnell Douglas, 411 U.S. at 802, by providing proof of "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4)

circumstances that support an inference of discrimination," Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002) (citations omitted). "If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant employer to produce 'evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'" Jackson v. Gonzales, 496 F.3d 703, 707 (D.C. Cir. 2007) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)). Once "the employer offers a nondiscriminatory justification for its actions, the McDonnell Douglas framework falls away," Vickers v. Powell, 493 F.3d 186, 195 (D.C. Cir. 2007), and the burden shifts back to the plaintiff to show that the employer's proffered reason is merely "pretextual," and designed to "shield[] discriminatory motives," Jackson, 496 F.3d at 707 (citation omitted).

The first step of the analysis becomes "irrelevant" when, as here, an employer has proffered a legitimate, nondiscriminatory reason for its hiring decision as part of its motion for summary judgment. Jones v. Bernanke, 557 F.3d 670, 678 (D.C. Cir. 2009). In such cases, "the district court need not—and should not—decide whether the plaintiff actually made out a prima facie case. Id. (quoting Brady, 520 F.3d at 494). Instead, the analysis should be limited to assessing whether, based on the entire record, "a reasonable inference of discrimination" exists. Id. This inference can be established "either directly by [showing] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Jones, 557 F.3d at 678 (quoting U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)).

The plaintiff concedes that she has produced no direct evidence of a discriminatory motive, Pl.'s Facts ¶ 4, and therefore relies on indirect evidence demonstrating that the proffered reason for Camera's selection is pretextual, id. When indirect evidence is the predicate for

proving a claim of discrimination, "[e]vidence indicating that an employer misjudged an employee's performance or qualifications is, of course, relevant to the question whether its stated reason is a pretext masking prohibited discrimination," but courts "may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" Fischbach v. Dist. of Columbia Dept. of Corr., 86 F.3d 1180, 1183 (D.C. Cir. 1996) (citations omitted). "The issue is not 'the correctness or desirability of [the] reasons offered' . . . [but] whether the employer honestly believes in the reasons it offers." Id. (alterations in original) (citations omitted).

Proof that a non-selected job applicant had a "stark superiority of credentials" may raise an inference of discrimination. Stewart v. Ashcroft, 352 F.3d 422, 429–30 (D.C. Cir. 2003). The requirements to raise this inference, however, set a high bar for a plaintiff to meet. In such circumstances, "[i]n order to justify an inference of discrimination, the qualifications gap must be great enough to be inherently indicative of discrimination." Holcomb v. Powell, 433 F.3d 889, 897–98 (D.C. Cir. 2006) (emphasis added); see, e.g., Lathram v. Snow, 336 F.3d 1085, 1091–92 (D.C. Cir. 2003) (holding that reasonable jury could infer discrimination based on the "wide and inexplicable gulf between the qualifications" of the plaintiff, who had several years of relevant experience, and the selectee, who was "an unemployed former journalist" with almost no relevant experience at the time of his selection). In contrast, a court "must assume that a reasonable juror who might disagree with the employer's decision, but would find the question close, would not usually infer discrimination on the basis of a comparison of qualifications alone." Jackson, 496 F.3d at 707 (citation and quotation marks omitted). Thus, "differences in qualifications that merely indicate a 'close call' do[] not get [a plaintiff] beyond summary judgment." Stewart, 352 F.3d at 430 ("This Court will not reexamine governmental promotion decisions where it appears the Government was faced with a difficult decision between two

qualified candidates, particularly when there is no other evidence that race played a part in the decision.").

In this case, the defendant has offered several nondiscriminatory reasons for its hiring decision. It explains that Camera, the person ultimately selected for the position, possessed superior relevant work experience and gave interview answers that were detailed and supported with examples. Def.'s Mem. at 15; Morey Dep. at 36–37, 61–62. It explains that the plaintiff, by contrast, exaggerated her past work experiences and gave only "shallow or short" answers to interview questions. Def.'s Mem. at 15; Morey Dept. at 36–37, 61–62. The plaintiff responds that the defendant's proffered reasons contain several flaws and thus are pretextual. Pl.'s Mem. at 21–32. However, none of the plaintiff's attempts to discredit the defendant's proffered explanation are persuasive.

First, the plaintiff argues that the many declarations and depositions filed in this case—including declarations from the plaintiff's former supervisor, the defendant's Chief of the Training Division, and a human resources specialist with knowledge of the plaintiff's other job applications, and the deposition of the equal employment specialist involved in the case—were all prepared "post-hoc" and the reasons set forth for hiring Camera instead of the plaintiff were not actually relied on by the selecting official at the time the hiring decision was made. Pl.'s Mem. at 21–22. The plaintiff is certainly mistaken with regard to at least a few of these documents,[9] but even accepting her claim as true, the claim is relevant only to the extent that the defendant relied on these documents. In fact, the defendant's proffered reasons stem almost entirely from the personal observations of the selecting official. See Def.'s Mem. at 14–16

---

[9] For example, the plaintiff claims that "Christine Camera was not consulted at the time the decision was made" and that "Taksaras [sic] Tzamaras, Deputy Superintendent of the Senate Office Buildings[,] was not consulted at the time the decision was made." Pl.'s Mem. at 22. Camera, of course, was the person actually hired for the position, and was certainly "consulted" during her job interview. Tzamaras, for his part, was a member of the "interview panel" for the position and was a major part of the hiring team. Def.'s Facts ¶ 20; Pl.'s Facts ¶ 20.

(citing Morey Dep. at 20–21, 24–25, 31–32, 36, 38–41, 48, 52, 54–62).  Moreover, the fact that the defendant's explanation for its hiring decision was prepared "post-hoc" does not diminish its credibility because without the current litigation, the defendant would have had no reason to explain its decision to hire Camera instead of the plaintiff.  See Jackson, 496 F.3d at 709–10 (rejecting the argument that preparation of an explanation for a hiring decision after litigation has commenced "casts doubt on the credibility of that explanation and therefore is evidence of pretext").

The plaintiff next argues that her job application did not exaggerate her experiences and that, in fact, she was at least as qualified as Camera for the position.  Pl.'s Mem. at 22–32.  She notes that while Camera had "familiarity with time and attendance [and] had supervisory responsibilities in her prior job," the plaintiff had the same experiences in her previous position as a Receptionist Service Officer.  Id. at 22–23.  Moreover, she contends that while Camera's previous position required "discipline and HR coordination, liaison duties, and programmatic duties," the plaintiff's "fully successful" rating on her September, 2008 Mid-Year Performance Evaluation indicates she completed comparable tasks.  Id. at 23–24.  Furthermore, while Camera had experience handling sensitive security items, the plaintiff "submits her strength in the area of security is unassailable."  Id. at 25.  The plaintiff suggests that she was actually more qualified than Camera because of her lengthy tenure as an employee of the defendant.  See Pl.'s Mem. at 25.  However, these assertions, even accepted as true, do not demonstrate the "stark superiority of credentials" that would be required to create an inference of discrimination in the absence of any other evidence of discriminatory motive.  Stewart, 352 F.3d at 429; see Brown v. Small, 437 F. Supp. 2d 125, 134–35 (D.D.C. 2006) (Walton, J.) (rejecting the plaintiff's argument that her twelve-year tenure in another position with the defendant in itself established a sufficient

difference in qualification to raise an inference of discrimination). As the defendant points out, Def.'s Reply at 11, the plaintiff does not question Camera's qualifications or the accuracy of her qualifications as set forth in her application, see generally Pl.'s Mem. At best, the plaintiff has demonstrated that she is equally qualified or conceivably slightly more qualified than Camera for the position. Thus, all she has shown is that the decision may have been a "close call," which is not sufficient to support an inference of discrimination. Stewart, 352 F.3d at 430.

Furthermore, the plaintiff's arguments regarding the credibility of the defendant's explanation for its hiring decision focus solely on the qualifications of the respective candidates, offering nothing to counter the defendant's reliance on Camera's interview performance as a factor in its hiring decision. The plaintiff does not dispute that her responses to the interview panel's questions were lacking, see Pl.'s Facts ¶ 22, but argues that her interview performance "was clearly not indicative of her ability to perform in the workplace as is indicated by her 'fully successful' performance rating," Pl.'s Mem. at 28. However, the defendant is entitled to rely on a candidate's superior interview performance as a rationale for selecting one candidate over another. See Fischbach, 86 F.3d at 1183–84 ("Selecting a pool of qualified candidates based upon their written credentials and then making a final selection based upon personal interviews is an obviously reasonable method of hiring a professional employee."); Vaughan v. Amtrak, __ F. Supp. 2d __, __, 2012 WL 4243645, at *7–8 (D.D.C. 2012) (noting that anti-discrimination laws do not prohibit employer from considering "intangible qualities" such as interview performance in making hiring decision and collecting cases). The plaintiff fails to point to any evidence to rebut this reason and reveal it as pretextual, as she must do to survive summary judgment. Vaughan, __ F. Supp. 2d at __, 2012 WL 4243645 at *8 (holding that summary judgment was

appropriate because plaintiff failed to rebut the employer's proffered reason of his poor interview performance, instead exclusively focusing on his qualifications for the position).

Finally, the plaintiff argues repeatedly that by questioning the experiences listed on her application but not those listed on Camera's application, the defendant "is applying a different standard/administrative criteria to the [p]laintiff; an admission of disparate treatment and pretext." E.g. Pl.'s Mem. at 24. This argument overstates the steps taken by the defendant to verify the plaintiff's application. Neither Camera's nor the plaintiff's application was subjected to any extended verification process; instead, the inconsistencies noted by the defendant were based on personal observations made by the selecting official during the course of the interview. See Def.'s Mem. at 15–16 (citing Morey Dep. at 20–21, 24–25, 48, 54–60). The plaintiff's previous employment was in the defendant's office, "probably 20 feet, 25 feet" away from the selecting official, Morey Dep. at 41–42, while Camera's previous positions were with private organizations, id. at 36. That the defendant had greater knowledge of the accuracy of the information included on the plaintiff's application is a natural consequence of this difference, not a red flag for discrimination.[10]

The thrust of the plaintiff's arguments is that she was well-qualified for the position for which she applied. However, even if correct, such an allegation is simply not sufficient to support a claim of discrimination under the Accountability Act. The plaintiff having failed to

---

[10] Another component of the plaintiff's argument is that the "reliance on the information provided in the application of Ms. Camera is . . . a reliance based on unverified hearsay." Pl.'s Mem. at 24. The plaintiff's exact argument is unclear. The only basis for the plaintiff's objection that the Court can discern is that the information contained in the application will be inadmissible at trial, and thus will not be available to offer as a non-discriminatory reason for the hiring decision. While it is true that the evidence relied on at the summary judgment stage must be admissible at trial, Fed. R. Civ. P. 56(c)(2), the information on Camera's application is being offered for its impact on the selecting official, not to prove the truth of that information, and so is not hearsay, Fed. R. Evid. 801(c) (defining hearsay as a statement not made during the current proceedings and that is offered "to prove the truth of the matter asserted in the statement").

show discriminatory motive in non-selection, the Court must grant the defendant's motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the limitations period for the plaintiff's claim began on January 30, 2008, and therefore her request for counseling was timely, permitting this Court to exercise jurisdiction over her discrimination claim.  However, the Court also concludes that the plaintiff has not offered proof that the reasons offered by the defendant for its hiring decision were pretextual.  Accordingly, the Court will deny the defendant's motion to dismiss but grant the defendant's motion for summary judgment.

**SO ORDERED** this 8th day of March, 2013.[11]

REGGIE B. WALTON
United States District Judge

---

[11] An Order consistent with this Memorandum Opinion will be issued contemporaneously.